## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROGER GIPSON, | ) | |
| BETTY GIPSON, | ) | |
| Plaintiffs, | ) | Case No. 1:24-cv-12319 |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| 3 GUYS AND A GIRL LLC, | ) | |
| REALTY & MORTGAGE CO., | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, ROGER GIPSON ("Roger"), and BETTY GIPSON ("Betty"), by their attorneys, Beyond Legal Aid, complain of Defendants, 3 GUYS AND A GIRL LLC, and REALTY & MORTGAGE CO., as follows:

## INTRODUCTION

1. This action challenges Defendants' discriminatory, retaliatory, and harassing conduct taken against Roger Gipson and his mother, Betty Gipson, in violation of the Fair Housing Act, the Illinois Human Rights Act, the Chicago Residential Landlord and Tenant Ordinance, and Illinois Common Law.

2. Roger and Betty have lived in their apartment, owned by Defendant 3 Guys and a Girl LLC, and managed by Defendant Realty & Mortgage Co., for over thirty years.

3. Both Roger and Betty are visually impaired and have mobility issues.

4. Roger suffers from Type 2 Diabetes and receives dialysis treatments three times a week. His leg was amputated in 2019, and he walks with a prosthetic leg.

5. Roger and Betty's apartment can only be accessed by a flight of stairs, which is

1

extremely difficult and dangerous for Roger to climb due to his disability.

6. Throughout Roger and Betty's three-decade tenancy, Defendants have neglected to maintain their unit and building, which has resulted in dangerous conditions such as a serious mold infestation, a gaping hole in the bathroom ceiling, leaky ceilings, and lead hazards.

7. Defendants have been cited for numerous City of Chicago building code violations, and the City of Chicago has pending litigation against Defendant 3 Guys and A Girl LLC related to these violations in the Circuit Court of Cook County, Illinois, Case No. 20241400327.

8. In 2023, Roger and Betty sought the assistance of community organizations to help redress these issues.

9. In September 2023, numerous community organizations wrote to Defendant Realty & Mortgage Co., notifying them of Roger and Betty's disabilities and requesting Roger and Betty be relocated into an accessible unit.

10. Defendants refused to grant Roger and Bettey's request.

11. In February 2024, Roger, through Counsel, repeated this reasonable accommodation request.

12. Defendants again refused to grant the accommodation request.

13. In addition to unlawfully denying Roger and Betty's reasonable accommodation requests, Defendants have also engaged in a campaign of discrimination, retaliation, harassment, and intimidation against Roger and Betty.

14. To date, Defendant Realty & Mortgage Co. has brought three baseless eviction

actions against Roger, the third of which remains pending in the Circuit Court of Cook County, Illinois, Case Number 20241715863.

15. Defendants have improperly served Roger and Betty with frivolous eviction notices, refused to satisfactorily address maintenance issues, and repeatedly ignored requests to only communicate with Plaintiffs via counsel.

16. Defendants' past and ongoing conduct jeopardizes Roger and Betty's ability to maintain housing due to their disabilities, puts them at risk of injury and severe adverse health effects, and subjects them to severe emotional distress.

17. If allowed to continue, Defendants' conduct will cause Roger and Betty irreparable injury.

## JURISDICTION AND VENUE

18. This Court has subject matter and supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1367.

19. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this complaint occurred in the Northern District of Illinois; Defendants conduct business in the Northern District of Illinois; and Plaintiffs reside within the Northern District of Illinois.

## PARTIES

20. Plaintiff Roger Gipson is a tenant residing at 4621 N. Spaulding Ave., Unit 1N (the "Unit"), Chicago, Illinois, 60625. He has lived in the Unit with his mother, Betty Gipson, for over thirty years.

21. Plaintiff Betty Gipson is a tenant residing at 4621 N. Spaulding Ave., Unit 1N,

Chicago, Illinois, 60625. She has lived in the Unit with her son, Roger Gipson, for over thirty years.

22. Roger is a person with a disability[1] within the meaning of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602(h); 24 CFR 100.201; and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-103(I).

23. Betty is a person with a disability within the meaning of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602(h); 24 CFR 100.201; and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-103(I).

24. Defendant 3 Guys and a Girl LLC, owns the property at 4617-4621 N. Spaulding Ave., Chicago, Illinois, 60625 ("the Building"), and is a limited liability company registered in Illinois with its principal address at 3805 W. Jarlath St., Lincolnwood, Illinois 60712. The Building is an apartment complex consisting of various units, which are "dwelling[s]" within the meaning of the FHA, 42 U.S.C. § 3602(b).

25. Defendant Realty & Mortgage Co. manages the Building, and is a corporation registered in Illinois with its principal address at 1509 W. Berwyn Ave., #200, Chicago, Illinois 60640.

## FACTUAL BACKGROUND

26. Roger and his mother Betty are long-term tenants of 4621 N. Spaulding Ave., Unit 1N, Chicago, Illinois, 60625.

---

[1] In this Complaint, Plaintiffs employ the word "disability" in place of "handicap." Plaintiffs note that the terms are interchangeable for purposes of the Fair Housing Act. *See, e.g., Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 n.2 (11th Cir. 2014) (stating "[d]isability scholars . . . generally prefer the term 'disability' to handicap . . . and the Americans with Disabilities Act . . . reflects that preference").

27. Roger has Type 2 Diabetes, for which he receives dialysis treatments three times a week. Roger has received dialysis treatment for all times relevant to this action. Roger's leg was amputated in 2019, and he walks with a prosthetic leg.

28. Betty is seventy-five (75) years old, and she suffers from mobility issues.

29. Both Roger and Betty are visually impaired.

30. Both Roger and Betty have been visually impaired for all times relevant to this action.

31. Roger and Betty's disabilities make it difficult and hazardous for them to use stairs.

32. Roger and Betty's Unit can only be accessed by climbing a 13-step flight of stairs.

33. Roger and Betty are both members of the Choctaw people. While Roger is fluent in English and Choctaw, Betty only speaks the Choctaw language.

34. The Unit's bathroom is infested with mold, and there are numerous structural problems throughout the Unit, including holes and cracks in the ceiling, peeling paint, and sloping floors.

35. The conditions issues in Roger and Betty's apartment subject them to significant health and safety risks.

36. Since 2005, the Building has failed nine inspections by the Chicago Department of Buildings, with the latest failure occurring on March 15, 2024.

37. Throughout their tenancy, Roger and Betty have complained to Defendant Realty & Mortgage Co. about the issues in their Unit and requested maintenance.

38. In particular, Roger and Betty complained to Defendant Realty & Mortgage Co.

about a rotting hole in their bathroom ceiling and mold in their bathroom since at least 2019.

39. Instead of providing the required maintenance, on or around March 29, 2023, Defendant Realty & Mortgage Co. served Roger with a notice of termination of tenancy, which alleged Roger had failed to keep the Unit clean and sanitary. Defendant Realty & Mortgage Co. served the notice to Roger by aggressively banging on his door at 11:19 p.m., which caused Roger and Betty severe distress.

40. On April 14, 2023, Defendant Realty & Mortgage Co. filed an eviction complaint against Roger in the Circuit Court of Cook County, Illinois, Case No. 20231705639, based on the March 29, 2023 notice of termination of tenancy.

41. The allegations in Defendant Realty & Mortgage Co.'s March 29, 2023 termination of tenancy notice lacked a factual basis. Defendants did not engage in any discussion with Roger and Betty regarding the alleged violation nor investigate whether Roger and Betty had cured any alleged violation before filing an eviction complaint against Roger.

42. In August 2023, a neighbor helped Roger and Betty contact the Autonomous Tenants Union ("ATU"), a community organization based in the Albany Park neighborhood of Chicago that assists tenants.

43. On or around September 15, 2023, ATU sent a letter on behalf of Roger and Betty to Defendant Realty & Mortgage Co. which: (i) formally notified Realty & Mortgage Co. of Roger and Betty's disabilities; (ii) requested that Roger and Betty be relocated to an accessible unit in consideration of Roger and Betty's disabilities;

and (iii) demanded that the severe conditions issues in the Unit be addressed. A true and accurate copy of the September 15, 2023 Request is attached hereto as Exhibit 1 and incorporated herewith.

44. Over the next several weeks, nine other community organizations contacted Defendant Realty & Mortgage Co. with letters of support for Roger and Betty, including the offices of Chicago City Council Alderwoman Rossana Rodríguez Sánchez and Alderman Carlos Ramirez-Rosa.

45. In November 2023, Roger and other tenants in the Building formed the Eastwood Spaulding Tenants Union ("ESTU") to advocate for repairs in Roger and Betty's apartment and the Building overall.

46. On or around November 14, 2023, ESTU delivered a letter to Defendant Realty & Mortgage Co. informing Defendants in writing that ESTU tenants, including Roger and Betty, would lawfully withhold a portion of their rent pursuant to the Chicago Residential Landlord and Tenant Ordinance ("CRLTO") and Illinois law if Defendants failed to make necessary repairs.

47. On December 4, 2023, Defendant Realty & Mortgage Co. voluntarily dismissed the first eviction complaint against Roger and agreed to seal the matter.

48. As of January 1, 2024, Defendants failed to make the necessary repairs in the Unit, so Roger and Betty began withholding a portion of their monthly rental payments to reflect the reduced value of their Unit.

49. Roger and Betty's monthly rental amount is $995.00 (nine hundred ninety-five dollars). Roger and Betty began paying a reduced rental amount of $500.00 to

reflect the reduced value of their Unit.

50. Around this time, other members of ESTU also began withholding portions of their monthly rental payments to reflect the reduced value of their individual units.

51. On February 2, 2024, Defendant Realty & Mortgage Co. filed a second eviction complaint, Case No. 20241702042, against Roger based on the same termination of tenancy notice served on him nearly a year earlier in March of 2023.

52. At the time they filed their second eviction complaint, Defendants had not inspected the Unit at any point since the previous notice and had no basis to allege Plaintiffs violated the lease.

53. On February 13, 2024, Roger and Betty participated in a press conference held by ESTU to raise awareness about the ongoing maintenance issues in Roger and Betty's apartment.

54. On February 23, 2024, the City of Chicago filed a complaint in the Circuit Court of Cook County, Illinois against Defendant 3 Guys and Girl LLC, Case No. 20241400327, for numerous building code violations. The City's case against Defendant 3 Guys and a Girl LLC remains ongoing.

55. On or around February 23, 2024, Roger, through undersigned counsel, sent an additional reasonable accommodation request to Defendant Realty & Mortgage Co., which requested a transfer to Defendant Realty & Mortgage Co.'s next available ground floor apartment because Roger's disabilities make him unable to effectively access his current apartment. A true and accurate copy of the February 23, 2024 Request is attached hereto as Exhibit 2 and incorporated herewith.

56. Defendant Realty & Mortgage Co, through counsel, refused to accommodate the request and did not initiate an interactive process with Roger and Betty regarding the request.

57. On or around June 25, 2024, the City of Chicago Department of Public Health posted a lead hazard notice on the Building's entrance which stated that "a unit or units in this building have been found to have lead hazards."

58. Upon information and belief, an employee or agent of Defendant Realty & Mortgage Co. removed the lead hazard notice later that day.

59. On or around July 2, 2024, another lead hazard notice appeared on the Building door. Upon information and belief, this notice was also removed by an employee or agent of Defendant Realty & Mortgage Co.

60. On or around July 17, 2024, ESTU sent an additional notice of rent reduction letter to Defendant Realty & Mortgage Co. referencing various ongoing maintenance issues, including the lead hazard notices.

61. On or around July 18, 2024, an employee of Realty & Mortgage Co. responded to ESTU's letter, claiming that there was no record of a lead violation in the Building.

62. On August 1, 2024, Defendant Realty & Mortgage Co. voluntarily dismissed its second eviction against Roger and agreed to seal the matter.

63. On or around August 20, 2024, Defendant Realty & Mortgage Co. acknowledged the City's discovery of lead paint in the Building and stated that the company was engaged in lead mitigation efforts.

64. Defendants failed to post notices on the Building's entrances regarding the lead

hazard as required by the Lead Poisoning Prevention Act, 410 ILCS 45/9.4.

65. Upon information and belief, Defendants have not finished mitigating the lead hazards found in the Building.

66. As of August 15, 2024, Roger and Betty continued to lawfully deduct $395.00 (three hundred and ninety-five dollars) from their monthly rental payments to reflect the reduced value of their Unit due to unresolved maintenance issues in accordance with city and state law.

67. On August 26, 2024, Defendants slipped two notices under Roger and Betty's door: a 5-day eviction notice based on alleged non-payment of rent and a 30-day notice of termination of tenancy.

68. The 5-day notice improperly demanded rent, which Roger and Betty have lawfully withheld under the CRLTO.

69. The termination of tenancy notice provided insufficient notice under the Chicago Fair Notice Ordinance given the length of Roger and Betty's tenancy.

70. These improperly served and legally baseless eviction notices caused Roger and Betty severe emotional distress by putting them in fear of losing their home of over thirty years.

71. On August 29, 2024, Roger and Betty, through counsel, sent a cease-and-desist letter to Defendant Realty & Mortgage Co.'s attorney notifying them that their behavior constituted a pattern of discrimination and harassment, reiterating that Roger and Better were withholding a portion of their monthly rental payment pursuant to city and state law, and requesting Defendants cease all harassing and

intimidating behaviors and communicate to Roger and Betty only through counsel.

72. On September 6, 2024, Defendants slipped another unlawful eviction notice under Roger and Betty's door.

73. On September 23, 2024, Defendants slipped an envelope under Roger and Betty's door, which contained only the money order Roger and Betty had previously tendered to Defendants for their September rent.

74. Roger must leave the apartment three times per week for several hours at a time to receive dialysis treatment.

75. During his absence from the apartment, Roger and Betty worry that Defendants will harass and intimidate Betty.

76. Because Betty is elderly, visually impaired, and does not speak English, she is particularly susceptible to experience emotional distress caused by Defendants' harassing and intimidating behavior.

77. Defendants' conduct causes Roger and Betty to fear that Defendants will attempt to execute an illegal eviction when Betty is home alone.

78. On October 2, 2024, Defendants filed a third eviction case against Roger in the Circuit Court of Cook County, Illinois, Case No. 20241715863.

79. Defendants have not commenced a single eviction action against any other ESTU member who lawfully withheld portions of their rent pursuant to city and state law.

80. Defendants continue to engage in discriminatory behavior toward Plaintiffs due

to their disabilities and in retaliation for Plaintiffs seeking to exercise their rights under the FHA, complaining about their Unit conditions, joining a tenants union, seeking assistance from a community organization, and speaking with the media.

81. Defendants have never remediated Roger and Betty's Unit to address the serious mold infestation in the bathroom, and they have not addressed numerous structural issues in the Unit, including sloping floors, various holes and cracks in the ceiling, peeling paint, and other issues related to severe water damage to the ceiling caused by previous leaks.

82. Defendants have engaged in a pattern of harassment and discrimination, which has caused Roger and Betty severe emotional distress.

83. The ongoing substandard conditions in Roger and Betty's Unit pose an immediate threat to Roger and Betty's physical health and cause them extreme emotional distress.

## CLAIMS

### COUNT I
### Discriminated in the Rental, or Otherwise Made Unavailable or Denied, A Dwelling In Violation of the Fair Housing Act, 42 U.S.C. § 3604 and the Illinois Human Rights Act, 775 ILCS 5/3-102.1

84. Plaintiffs incorporate each paragraph of this pleading as if restated fully herein.

85. Defendants have engaged in a pattern of discrimination toward Plaintiffs, including serving Plaintiffs with multiple notices of termination of tenancy and bringing three eviction actions seeking to evict Roger from the Unit, the third of which remains pending in the Circuit Court of Cook County, Illinois.

86. Defendants have discriminated against Plaintiffs by allowing their Unit to fall

into significant disrepair.

87. By the actions set forth herein, Defendants have:

   a. Discriminated in the rental of, or otherwise making unavailable or denying, a dwelling because of disability, in violation of 42 U.S.C. § 3604(f)(1) and 775 ILCS 5/3-102.1(A); and

   b. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2) and 775 ILCS 5/3-102.1(B).

88. As a result of Defendants' conduct, Plaintiffs have been injured, suffered damages, and are aggrieved persons or parties within the meaning of 42 U.S.C. § 3602(i) and 775 ILCS 5/1-103(B).

89. Defendants' discriminatory actions were intentional, willful, and taken in reckless disregard of Plaintiffs' rights.

90. Roger and Betty will suffer irreparable injury if their tenancy is terminated, and they are evicted from the Unit.

**COUNT II**
**Refusal to Make a Reasonable Accommodation In Violation of the Fair Housing Act, 42 U.S.C. § 3604 and the Illinois Human Rights Act, 775 ILCS 5/3-102.1**

91. Plaintiffs incorporate each paragraph of this pleading as if restated fully herein.

92. Plaintiffs made multiple reasonable accommodation requests based on their disabilities, including through the September 15, 2023 letter to Defendant Realty & Mortgage Co.

93. Roger sent an additional reasonable accommodation request through his attorney on or around February 23, 2024 to Defendant Realty & Mortgage Co., which documented his disability and asked that he and Betty be transferred to a ground floor apartment with minimal or no stairs.

94. Defendants ignored Plaintiffs' reasonable accommodations requests and failed to provide Plaintiffs with an opportunity to transfer to a ground floor unit or other acceptable accommodation.

95. By the actions set forth herein, Defendants have:

      i. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2) and 775 ILCS 5/3-102.1(B); and

      ii. Refused to make a reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B) and 775 ILCS 5/3-102.1(C)(2).

96. As a result of Defendants' conduct, Plaintiffs have been injured, suffered damages, and are aggrieved persons or parties within the meaning of 42 U.S.C. § 3602(i) and 775 ILCS 5/1-103(B).

97. Granting such a request would neither result in undue financial or administrative burdens for Defendants.

98. Defendants' discriminatory actions were intentional, willful, and taken in reckless disregard of Plaintiffs' rights.

99. Roger and Betty will suffer irreparable injury if their reasonable accommodation request is not granted because the stairs to their Unit make it extremely difficult and dangerous for them to access their apartment.

## COUNT III
### Hostile Housing Environment in Violation of the Fair Housing Act, 42 U.S.C. § 3617 and the Illinois Human Rights Act, 775 ILCS 5/3-105.1

100. Plaintiffs incorporate each paragraph of this pleading as if restated fully herein.

101. In violation of 42 U.S.C. § 3617 and 775 ILCS 5/3-105.1, Defendants have coerced, intimidated, threatened, and interfered with Plaintiffs' exercise and enjoyment of their rights under 42 U.S.C § 3604 and 775 ILCS 5/3-102.1, respectively, by subjecting Plaintiffs to multiple baseless eviction notices and actions, substandard and dangerous living conditions, and discriminatory, harassing, and intimidating behavior.

102. As a result of Defendants' conduct, Plaintiffs have been injured, suffered damages, and are aggrieved persons or parties within the meaning of 42 U.S.C. § 3602(i) and 775 ILCS 5/1-103(B).

103. Defendants' discriminatory actions were intentional, willful, and taken in reckless disregard of Plaintiffs' rights.

104. Roger and Betty will suffer irreparable injury if Defendants' coercive, intimidating, and threatening behavior is allowed to continue.

## COUNT IV
## Retaliation in Violation of the Chicago Residential
## Landlord and Tenant Ordinance, Ch. Mun. Code 5-12-150

105. Plaintiffs incorporate each paragraph of this pleading as if restated fully herein.

106. Under the CRLTO,

> A landlord may not knowingly terminate a tenancy . . . decrease services, bring or threaten to bring a lawsuit against a tenant for possession . . . because the tenant has in good faith:

> (a) Complained of code violations applicable to the premises to a competent governmental agency, elected representative or public official charged with responsibility for enforcement of a building, housing, health or similar code; or
> (b) Complained of a building, housing, health or similar code violation or an illegal landlord practice to a community organization or the news media; or
> (c) Sought the assistance of a community organization or the news media to remedy a code violation or illegal landlord practice; or
> (d) Requested the landlord to make repairs to the premises as required by a building code, health ordinance, other regulation, or the residential rental agreement; or
> (e) Becomes a member of a tenant's union or similar organization . . . .

> Ch. Mun. Code § 5-12-150.

107. Further, "[i]n an action by or against the tenant, if there is evidence of tenant conduct protected herein within one year prior to the alleged act of retaliation, that evidence shall create a rebuttable presumption that the landlord's conduct was retaliatory." *Id.*

108. Throughout their tenancy, Roger and Betty have regularly notified Defendants of the serious conditions issues in their Unit and requested maintenance and repair.

109. Moreover, in the last year, Plaintiffs have complained to Defendants of conditions issues, notified a community organization of the conditions issues and

16

Defendants' attempts to evict them, sought assistance from a community organization and elected representatives, notified the media of the maintenance issues and eviction attempts, and become a member of a tenant's union.

110. Subsequently, Defendants allowed the dangerous conditions issues in Plaintiffs' Unit to further decline, constituting a decrease in services under the CRLTO in violation of Ch. Mun. Code 5-12-150.

111. Further, Defendants posted eviction notices on Plaintiffs' door on August 26, 2024, and September 6, 2024, in retaliation for Plaintiffs' actions described above, in violation of Ch. Mun. Code 5-12-150.

112. In addition, Defendants have brought three eviction actions against Mr. Gipson in the Circuit Court of Cook County, Illinois.

113. Roger and Betty will suffer irreparable injury if Defendants' retaliatory behavior is allowed to continue.

**COUNT V**
**Failure to Maintain Premises in Violation of the Chicago Residential**
**Landlord and Tenant Ordinance, Ch. Mun. Code 5-12-070, 5-12-110**

114. Plaintiffs incorporate each paragraph of this pleading as if restated fully herein.

115. Section 5-12-070 of the CRLTO states that "[t]he landlord shall maintain the premises in compliance with all applicable provisions of the municipal code and shall promptly make any and all repairs necessary to fulfill this obligation." Ch. Mun. Code § 5-12-070.

116. Section 5-12-110 of the CRLTO delineates the specific obligations of a landlord under Section 5-12-070.

117. Despite continued requests for maintenance from Plaintiffs and ESTU, Defendants have failed to remedy numerous conditions issues in Roger and Betty's Unit and the Building, such as mold in the bathroom, severe water damage to their ceilings caused by previous leaks, sloping floors and other structural issues, and lead hazards, in violation of Sections 5-12-070 and 5-12-110 of the CRLTO.

118. As a result of Defendants' failure to maintain the Building and Plaintiffs' Unit, Plaintiffs have suffered emotional distress, and a reduction in the value of their apartment.

119. Roger and Betty will suffer irreparable injury if Defendants' behavior is allowed to continue because the conditions in their Unit and the building overall pose a danger to their health.

**COUNT VI**
**Breach of Warranty of Habitability**

120. Plaintiffs incorporate each paragraph of this pleading as if restated fully herein.

121. A landlord of residential property impliedly warrants that the residence is habitable. *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 366 (1972).

122. The warranty of habitability requires that the residence be free from latent defects in facilities that are "vital to the use of the dwelling for residential purposes and vital to the life, health, and safety of the tenant," both at the inception of the lease and throughout its term. *Glasoe v. Trinkle*, 107 Ill. 2d 1, 13 (1985).

123. If the residence is located in a community that has adopted a building code, substantial compliance with that code satisfies the landlord's duties. *Jack Spring,*

*Inc.*, 50 Ill 2d at 366.

124. The Building has been frequently cited for Chicago building code violations, including a failed inspection on March 15, 2024. Additionally, Defendants are currently in Chicago building court for multiple code violations.

125. Further, upon information and belief, the Chicago Department of Public Health has identified lead hazards in the Building, which Defendants have yet to mitigate.

126. Plaintiffs continue to suffer maintenance issues in their Unit despite multiple maintenance requests to Defendants, including several issues that pose a severe risk to Roger and Betty's health, such as mold in the bathroom, severe water damage to their ceilings caused by previous leaks, and lead hazards.

127. Defendants' failure to properly maintain the Building and Plaintiffs' Unit constitutes a breach of the warranty of habitability, causing Plaintiffs to suffer damages.

128. Roger and Betty will suffer irreparable injury if Defendants' behavior is allowed to continue because the conditions in their Unit and the building overall pose a danger to their health.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Roger Gipson and Betty Gipson respectfully request that this Court enter a judgment in their favor and against Defendants 3 Guys and a Girl LLC and Realty & Mortgage Co., awarding:

      A. A declaration that Defendants' actions, policies and practices, as alleged

herein, violate the Fair Housing Act, the Illinois Human Rights Act, and the Chicago Residential Landlord and Tenant Ordinance;

B. Permanent injunctive relief prohibiting Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them from:

    a. Discriminating on the basis of disability, in violation of the Fair Housing Act and the Illinois Human Rights Act;

    b. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Plaintiffs to the position they would have been in but for the discriminatory conduct;

    c. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future;

    d. Harassing or intimidating Plaintiffs, including but not limited to serving them frivolous eviction notices, filing baseless eviction actions, and failing to communicate through Plaintiffs' counsel; and

    e. Failing to address dangerous maintenance issues in Plaintiffs' Unit and the Building.

C. An award of actual and compensatory damages to Plaintiffs, including statutory damages in accordance with 42 U.S.C. § 3613(c)(1), 775 ILCS

5/10-102(C)(1), Ch. Mun. Code 5-12-150, and Ch. Mun. Code § 5-12-110(e).

D. An award of punitive damages in an amount to be determined at trial;

E. An award of costs of this action and reasonable attorney's fees; and

F. Such additional relief as the interests of justice may require.

## JURY DEMAND

Plaintiffs Roger Gipson and Betty Gipson hereby demand a trial by jury under Federal Rule of Civil Procedure 38(b) on all issues so triable.

November 27, 2024                    Respectfully submitted,


By: /s/ Sarah Cockrum
Sarah Cockrum (ARDC No. 6335428)
Beyond Legal Aid
17 N. State Street, Suite 1380
Chicago, Illinois 60602
Tel: (913) 314-3360
Email: scockrum@beyondlegalaid.org
*Counsel for Plaintiffs Roger Gipson and Betty Gipson*